That's correct. Thank you, Your Honor. Good morning. May it please the Court. Kendra Hutchinson of Federal Defenders for Ramon Peralta. This case presents one issue. The guidelines range here was 37 to 46 months and probation recommended 37 months. The district court, however, varied substantially upward to 60 months. This was substantively unreasonable in this case. Now, the history and characteristics of Mr. Peralta strongly counseled towards a sentence that was lower. And Judge Harris acknowledged these. We're not contending that the judge ignored these mitigating factors. He had an admirable, selfless life. These crimes were aberrational. He came from very inauspicious, humble beginnings. He was a caretaker for his elderly mother. I think, you know, in particular here is this, you know, Mr. Peralta had a lack of criminal history. And the judge noted that this really did not counsel for, you know, the factors of specific deterrence or public protection being very important here. So really what we have left is what the court focused on. I think that's what this case is really about, right? Is, you know, this court's admonition that, you know, when there's a substantial variance, the court, you know, this factor must bear the weight. And we contend that here the factors that the court, you know, pointed to in its, you know, statement of reasons, which was elucidated, do not bear the weight here. Why not, Ms. Hutchinson, if you have a sexual assault, right? Extremely serious conduct. Agreed? Agreed? Yes. We don't contest that, Your Honor. The guideline range, 37 to 46 months, would have been the same exact range if he had only pled guilty to the lying about the sexual contact with victim number one. Agreed? That's right, Your Honor, because this was driven by the false statement guidelines. We had a guideline that was completely, 100 percent driven by the false statement, which is also a serious matter, which the judge emphasized. So why couldn't a judge conclude that 14 additional months, a total of 60, was warranted given a sexual assault and the harm that the victim, victim number one testified as well, but victim number two testified at the sentencing, how she is never going to recover from what your client did to her? And why is that then a shockingly high sentence under those circumstances to get 14 months above the guideline? And the other factor, which you pointed to, which you may want to address, is that he concluded, based upon looking and listening to your client at the sentencing, that he was not remorseful, that he was smirking. So why isn't those combination of things, notwithstanding the mitigating factors which he considered sufficient for him to impose that sentence? That's the bottom line. Well, Judge Bianco, you really zeroed right in on my section one and two here. You really brought this right down to what's at issue here. And what we have here is an unusual case inasmuch as Judge Harris explicitly stated on page 149 of the record, the main driver, exactly what Your Honor was saying here. The main driver is the false statement. That is why the statutory max is higher and why the guidelines are higher than one might normally see. And here's the real important quote. The guidelines in this sense, I think, actually makes sense because they at least attempt to key the magnitude of the false statement to the magnitude of the crime that's being investigated. So Judge Harris explicitly noted that the guidelines here, you know, were keyed to the level of the offense. And, indeed, they were. I mean, this — No, but he was talking about that in terms of the lie, that the guidelines accurately reflect that the lie was about something very serious and important. But that wasn't suggesting that he didn't also believe that based upon the harm he had caused from the sexual assault that he should get higher than the guidelines, right? Those two things aren't inconsistent with saying, yes, this guideline accurately reflects when you lie about, you know, allegations of a sexual assault, which is what they were investigating. This is a good guideline for that, but also conclude it's not sufficient when you also have a sexual assault. And so what's important to note here is Mr. Peralta did, indeed, plead guilty to two different offenses, right? So he did plead guilty to the false statement. And I would note that the false statement was not that he made to the FBI. What he allocated to was not falsely stating he did not sexually assault someone, but falsely stating that he did not have sexual contact with someone. So, I mean, that wasn't actually built into his allocution. And he also, you know, allocated to forcibly touching a person. And so, Judge, he did, indeed, take responsibility for these for this, you know, these two crimes that he. Well, you could take responsibility. But then at the sentencing, when the victims get up there and give very compelling statements about the harm he's caused and his response was to smirk, you know, and, you know, the case law, we're very clear that we give deference to a judge who's sitting there who's seeing the body language, the tone. You want us to second guess Judge Karras' conclusion that notwithstanding his guilty plea that he was not appreciating the harm that he had caused? So, okay. So, you know, we're. So, Judge, what we have here is Mr. Peralta did, indeed, you know, express remorse for the conduct that he pleaded guilty to. He could not express remorse to a sexual assault because he didn't plead guilty to the level of offense, you know, basically that he denied, right? He denied raping somebody. He did not plead guilty to that, Judge. He pled guilty to forceful sexual assault. He could have apologized to the victim, too, for what he pled guilty to, which was groping her, and he didn't do that. So Mr. Peralta's remorse is tied to the offenses to which he was comfortable under oath, quite frankly, Your Honor, pleading guilty to, number one. And number two, then I think what this comes down to is Judge Karras' evaluation of a smirk. So a smirk equals, is, you know, bears the weight of a 14-month departure from the guidelines, a smirk. You know, I think that that does not bear the weight in this particular case, Your Honor. And we do not contest that these are serious offenses. Mr. Peralta pled guilty to both. He did. And, you know, he put remorse on the record at the time, and, you know, and Judge Karras saw what he saw, and we can't contest that, and we don't. But, you know, Mr. Peralta continues to express this remorse. Where did he express remorse for groping victim number two? Where did he do that? He didn't do that. He didn't plead guilty to that, Your Honor. He pled guilty to a false statement. He pled guilty to groping victim number two. I read his plea. That's what he said. He said that I didn't rape her, but I groped her. Excuse me, then. The chronology of the victims is, yes, he did plead guilty to groping, to forcefully assault. And at the sentencing, after she testified as to the harm that he caused, he said nothing in terms of apologizing to her or even recognizing that harm that he had agreed that he had done. So I'd point, Your Honor, to A145. Your Honor, with all due respect, I would like to say that I'm apologizing for having touched the person without their consent. Okay. So he does. And so, you know, at the end of the day, and I'll sit down. I know my time is just about up. But at the end of the day, what we have is a judge who recognizes that the guidelines are tied to the gravity of the offense. You know, somebody who perhaps imperfectly expresses remorse and gets under Judge Garris' skin, and that's okay. We can acknowledge that, Your Honor. But does a smirk itself equal 14 months? Thank you. All right. Thank you, Ms. Hutchinson. We have Mr. Wickstrom for the government. Did I see you just smirk? I don't think it was a smirk. I was looking nervous, Your Honor, about the squeak of the podium. So good morning. May it please the court. My name is Derek Wickstrom. I represent the United States in this appeal, as I did in the district court. I'd like to pick up where Ms. Hutchinson left off. First of all, as Judge Bianco pointed out, it's, of course, true that this court will defer to district judges' observations of the defendant and the victims at sentencing. And that is appropriate. Judge Garris was uniquely situated to observe Mr. Peralta and his victims and evaluate their feelings about and their reactions to the crimes that Mr. Peralta committed. But it is not the case on this record that Judge Garris imposed a 14-month upward variance based on a smirk. That's just not borne out by the record. Judge Garris did remark about the smirk, but it was in the context of remarking about the statements that Mr. Peralta had made at sentencing, which Judge Garris said he was unimpressed by. And it was in the context of recognizing that the victims had given really moving statements about how they had been affected by Mr. Peralta's conduct. And it was the—there was not a single factor that had to bear the weight of this 14-month variance. It wasn't just the smirk. It wasn't just Mr. Peralta's conduct at the sentencing proceeding. It was also Judge Garris's correct evaluation about the harm that Mr. Peralta had caused and about the seriousness of Mr. Peralta's offenses. And so given the constellation of factors on which Judge Garris based his decision to vary upward, this was a substantively reasonable sentence. This was a serious crime. It caused serious harm. And Judge Garris appropriately weighed and considered the personal characteristics of the defendant before he imposed that 14-month upward variance. So for all of those reasons and the reasons in the government's brief, the government respectfully submits that the court should affirm, unless there are any questions. I had one question. I just—as I was reading this record, it seemed like even in your appeal, your appellate brief, you suggest that Mr. Peralta committed two sexual assaults. And as Ms. Hutchinson, I think, correctly pointed out, he beamingly denied with respect to victim number one that he had—that any of it was nonconsensual. And, in fact, pled guilty to lying about having had had contact. But—and it seems like at sentencing, it was—the government was—and I looked at your sentencing papers and at the sentencing itself, it was almost treating it as if he had pled guilty to two sexual assaults. And that—Judge Garris didn't ever say that. He didn't say, you've committed two sexual assaults. In fact, he said at some point, I'm not making any credibility findings. And the defense counsel noted this distinction regarding what he was disputing with respect to victim number one. But why is the government referring to this as him having committed two assaults when he never pled guilty to that? I take that point, Judge Bianco. I do think it was not contested. Those facts were argued at sentencing. They were included in the PSR. I know it was unusual. I mean, I was looking at that. They put a footnote in their sentencing submission saying we don't object to that because the victim did say that that's what happened. So we're not objecting to the paragraph, but they made it very clear that he objects to the substance of what victim one and partially victim two was claiming. So it's not as if they just were silent and adopted the victim one and victim two's complete statements. No, that's certainly right, Your Honor. And, in fact, on page 139 of the appendix in the sentencing transcript, defense counsel said that they understood that the court was allowed to consider what else occurred here and what the victims had said about his conduct. And Judge Karras, I think, made clear that he wasn't finding that Mr. Peralta had committed two rapes in imposing this sentence, but he was considering what the victim said about how they had been harmed and how they felt about the conduct. And under the circumstances— So you agree it's a somewhat unusual situation where all he pled to was lying about having had sexual contact, but victim one testified at the sentencing as if there was a finding of forced sexual assault, right? Well, I don't think victim one was speaking about any finding. Victim one was speaking about her own experience, and it was appropriate. I'm just saying she was allowed to speak as if, as if, that he had pled guilty to assaulting her when he had pled guilty to lying about having had sexual contact. But that's my only point. Understood. That's correct, Your Honor. But it was not—there was nothing improper about electing to hear from victim one. It was not a subject of any defense objection, and the ultimate sentence was still substantively reasonable. All right. Thank you, Mr. Woodcock. Thank you, Your Honor. Ms. Hutchison, you have two minutes in rebuttal. Thank you. I'll be very, very brief. So, you know, the government relies on a constellation of factors to support the upward variance here. But I'd point the court to page 151 of the appendix where Judge Karras explicitly lays out his—basically his statement of reasons. Because, you know, he goes through the 3553 factors very exhaustively before properly, but he does really focus there on why he's varying upwards. So the guideline range is not sufficient, does not account for the seriousness of the conduct, which is what we've been talking about. And so what he characterizes Mr. Peralta's conduct as, his denial of them, his lies to investigators, so basically really focusing on the statements here. However, Judge Karras himself acknowledged that the guidelines took that into account. We have a tension here that cannot be resolved. And this, as a result, this factor, this reliance on the seriousness of the conduct as it accounts for the statement does not bear the weight of this upward variance. And then, Judge Bianco, to pick up on your questioning then, this is, you know, however much we're not contesting the facts, however horrific or moving the victim's statements are, this is not a case in which Mr. Peralta pled guilty to under oath, you know, to sexual assault. He didn't. He didn't do that. And, you know, that is why this sentence, there's another reason why this sentence is unreasonable. Thank you. There was no objection when victim one spoke, was testifying about the assault. There was no objection along the lines of what I suggested to the government, but defense counsel didn't make an objection. Like, Judge, he didn't plead guilty to that. He disputes that. No, Your Honor. Okay. All right. Thank you, Ms. Hutchinson. Thank you.